H. Thompson PRENTZEL, III, Appellant,

v.

STATE of Alaska, DEPARTMENT OF PUBLIC SAFETY, Trooper Daniel Scott, Trooper Dane Gilmore, Captain Warren Tanner, and Colonel Glen Godfrey, Appellees.

No. S–9979.

Supreme Court of Alaska.

Aug. 23, 2002.

**37.** *Glacier State Tel. Co. v. Alaska Pub. Utils. Comm'n,* 724 P.2d 1187, 1190 (Alaska 1986).

H. Thompson Prentzel, III, pro se.

Richard Keck, Assistant Attorney General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I.  INTRODUCTION

State troopers arrested a man without a warrant because they thought he was violating his court-imposed conditions of release from a prior charge. He was never charged with violating the release conditions. The man sued the State of Alaska and individual Alaska State Troopers. Was it error to dismiss on the pleadings his negligence claims

---

1.  Because this appeal is taken from an Alaska Civil Rule 12(c) dismissal, we read the facts alleged in the pleadings and the inferences to be drawn therefrom in a light most favorable to the non-movant. *Hebert v. Honest Bingo*, 18 P.3d 43, 46–47 (Alaska 2001).

against the state and his negligence and 42 U.S.C. § 1983 claims against the individual troopers?  Because the pleadings alone do not allow us to decide the resulting issues, we reverse in part the dismissal of his claims and remand for further proceedings.

## II.  FACTS AND PROCEEDINGS

Alaska State Troopers Daniel Scott and Dane Gilmore saw H. Thompson Prentzel III walk down College Road in Fairbanks at 3:30 a.m. in October 1998 with a bottle of alcohol in his possession.[1]  The trooper dispatcher informed Troopers Scott and Gilmore that Prentzel, who had previously been charged with driving while intoxicated (DWI), was subject to a court-ordered condition of release that precluded him from possessing alcohol.  Troopers Scott and Gilmore then arrested Prentzel without a warrant for violating his DWI release conditions.[2]  Prentzel was later released without being charged with violating his release conditions.

Prentzel filed a civil action in October 1999 against the Alaska Department of Public Safety, Trooper Scott, Trooper Gilmore, Captain Warren Tanner, and Colonel Glen Godfrey (the "state defendants"), alleging false arrest, false imprisonment, trespass to chattels, conversion, and negligence.  The parties disagree about the circumstances surrounding the arrest.  Prentzel's complaint stated that he was:

> humiliatingly handcuffed in public for more than 10 min.; detained in an unsanitary cell without sink or toilet for more than 12 hours; manhandled by officers who falsely charged [him] with resisting arrest ... [and] drug possession, [had] the humiliation of having these false charges ... printed in the local newspaper ... all resulting in increased stress.

The state defendants denied these allegations and asserted instead that Prentzel had resisted arrest.  The state filed an Alaska

---

2.  The troopers also arrested Prentzel for resisting arrest and possessing marijuana.

Civil Rule 12(c) motion to dismiss on the pleadings. Prentzel then moved to amend his complaint to claim civil rights violations under 42 U.S.C. § 1983, attorney's fees under 42 U.S.C. § 1988, and violations of his civil rights under the Alaska Constitution. The state defendants did not oppose amendment. The state defendants moved to dismiss the civil rights claim and the state constitutional claim in June and July 2000 and to consolidate and dismiss Prentzel's other claims. Prentzel opposed dismissal. On August 7, 2000 Prentzel moved for permission to file a second amended complaint to add an additional unknown state trooper as a defendant, and to allege that the state defendants' actions were willful and carried out with malice. On August 10 the superior court granted the state defendants' motion to dismiss the amended complaint and held that the second amended complaint would not change the outcome of the ruling. The superior court also awarded the state defendants prevailing party attorney's fees of $1,000.

Prentzel appeals.

## III. DISCUSSION

### A. Standard of Review

█ We review de novo the grant of a Rule 12(c) motion for judgment on the pleadings.[3] The state defendants can prevail only if Prentzel's pleadings contain no allegations that would permit recovery if proven.[4]

### B. It Was Error To Dismiss Prentzel's Claims Against Troopers Gilmore and Scott on the Grounds of Official Immunity.

Prentzel argues that the superior court erred in dismissing on official immunity grounds his claims against Troopers Scott and Gilmore. Prentzel argues that Troopers Scott and Gilmore exceeded the scope of their authority, thereby forfeiting immunity, when they arrested Prentzel without a warrant. Prentzel argues that AS 12.25.030 does not authorize warrantless arrests for violations of DWI conditions of release. He also argues that the allegation of malice in his proposed second amended complaint created a factual dispute that precluded judgment on the pleadings. The state defendants argue that Troopers Scott and Gilmore "are immune from liability for making an error in their personal deliberation, decision, and judgment regarding the scope of their arrest authority." The state defendants conclude that this immunity extends to state officials who misinterpret the law.

The superior court ruled that Prentzel's arrest was "an exercise of Trooper discretion," and that governmental immunity protects Troopers Scott and Gilmore from liability for misinterpreting their authority to arrest Prentzel under AS 12.25.030.[5] The superior court also denied Prentzel's August 2000 motion to amend his complaint to add a charge of willful and malicious conduct because it ruled that the amendment would "not change the outcome herein."

█ Alaska Civil Rule 15(a) allows parties to amend their pleadings by leave of court; leave is to be granted when justice requires.[6] We have held that "the trial court has broad discretion in allowing or denying proposed amendments after the initial period has passed under [Rule 15(a)]."[7] Typical reasons for denying leave to amend include the added expense and increased burden the opposing party is likely to face as a result of the amendment.[8] But a party should be permit-

---

3. *Hebert*, 18 P.3d at 46 (citing *Noey v. Bledsoe*, 978 P.2d 1264, 1271 n. 19 (Alaska 1999)).

4. *Id.* at 47 (citing CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1368, at 527–28 (2d ed.1990)).

5. AS 12.25.030 addresses, among other things, grounds for arrest by a peace officer without a warrant. At the time of Prentzel's arrest, AS 12.25.030 did not include arrest for violating the conditions of release from a DWI charge.

6. The rule states in part that "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires." Alaska R. Civ. P. 15(a).

7. *Rutledge v. Alyeska Pipeline Serv. Co.*, 727 P.2d 1050, 1054 (Alaska 1986) (citations omitted).

8. *Thompson's Estate v. Mercedes–Benz, Inc.*, 514 P.2d 1269, 1271 (Alaska 1973) (citation omitted).

ted to amend if there is no showing that amending would cause injustice.[9]

■ It does not appear that the superior court based its decision to deny Prentzel's second attempted amendment on grounds of increased burden, added expense, or potential injustice to the state defendants. Instead, the superior court concluded that Prentzel's second amended complaint would not alter the legal grounds for dismissing Prentzel's claims.

The superior court's ruling would have been correct if Prentzel's amendment would have been fruitless.[10] This would have been the case if the immunity protecting Troopers Scott and Gilmore were absolute, because an allegation of malice will not defeat absolute immunity.[11] But if the officers are entitled to immunity it must be qualified, not absolute, immunity.[12] We have stated that "[u]nder a rule of qualified immunity, a public official is shielded from liability only when discretionary acts within the scope of the official's authority are done in good faith and are not malicious or corrupt."[13] Prentzel claimed in his rejected second amended complaint that the actions of Troopers Gilmore and Scott "were made with malice toward [Prentzel]." Whether they acted maliciously is a factual question not suitable for disposition on the pleadings when a complaint properly pleads malice.[14] We therefore hold that it was error to deny the amendment and to rule that the doctrine of official immunity entitled Troopers Gilmore and Scott to judgment on the pleadings.

**9.** *Id.*

**10.** *See Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618, 627 (7th Cir.1987) (affirming denial of motion to amend ERISA complaint under Federal Civil Rule 15(a) where amendment to add punitive damages claim would be fruitless because statute did not permit recovery of punitive damages).

**11.** *Aspen Exploration Corp. v. Sheffield,* 739 P.2d 150, 160 (Alaska 1987).

**12.** *Samaniego v. City of Kodiak,* 2 P.3d 78, 83–84 (Alaska 2000) ("[P]olice officers, as municipal officers, concurrently enjoy qualified immunity for certain discretionary actions."); *see also* 1

## C. It Was Error To Dismiss Prentzel's Negligence Claim Against the State and Officers Tanner and Godfrey.

### 1. The pleadings do not preclude the possibility that the state defendants owed Prentzel an actionable duty.

■ Prentzel contends that Captain Tanner and Colonel Godfrey "failed in their duty to train and supervise Sergeant John Doe, Trooper Scott and Trooper Gilmore concerning the scope of their lawful authority to arrest a person without a warrant when such person is not committing an offense." The state defendants argue that Captain Tanner and Colonel Godfrey owed Prentzel no duty to be error-free in their supervision and training of Troopers Scott and Gilmore because Troopers Scott and Gilmore themselves owed no duty to Prentzel to be error-free in their arrest. But whether Captain Tanner and Colonel Godfrey owed Prentzel a duty cannot be conclusively resolved by resort to this simple syllogism. Instead, we have stated that an actionable duty of care is a public policy question involving:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability,

CIVIL ACTIONS AGAINST STATE AND LOCAL GOVERNMENT § 4.5, at 308 (Shephard's Editorial Staff eds., 2d ed. 1992) ("Generally speaking, absolute immunity applies only to judges, legislators, and the highest executive officers of various levels of state government[;] . . . other public officers are covered by qualified immunity.").

**13.** *See Aspen Exploration,* 739 P.2d at 158 (citation omitted) (explaining that allegations of malice generally create factual disputes precluding summary adjudication).

**14.** *Id.* at 160 & n. 24.

cost and prevalence of insurance for the risk involved.[15]

■ Prentzel urges us to hold that the state owes a duty to its citizens to supervise and train state troopers so that they do not make mistakes like the one made by Troopers Scott and Gilmore. Inadequate police training can be actionable,[16] but we are reluctant to decide whether any duty was owed in this case based on the limited fact inferences permissible from the pleadings alone. Although determining whether an actionable duty exists is a legal question,[17] the factual context can be a helpful indicator of the public policy questions at issue.[18] Prentzel's amended complaint does not rule out the existence of actionable training and supervision duties.[19] We hold that the dismissal of the training and supervision claim cannot be sustained on a theory the pleadings alleged no actionable duty.

### 2. Determining whether Captain Tanner and Colonel Godfrey are entitled to immunity for supervision and training of the arresting officers requires further development of the underlying facts.

■ Prentzel next argues that the state is not entitled to discretionary function immuni-

ty under AS 09.50.250(1).[20] He asserts that "[n]o discretion" in the matter of his arrest "was vested in [the state], Colonel Godfrey, Captain Tanner, Sergeant Doe, Trooper Scott or Trooper Gilmore."

■ We have adopted a "planning/operational" dichotomy for identifying those governmental acts entitled to discretionary function immunity under AS 09.50.250.[21] "A planning decision is one that involves policy formulation, whereas an operational decision involves policy execution or implementation."[22] Planning decisions are entitled to discretionary function immunity; operational decisions are not. Prentzel argues that any decisions made by the state in supervising and training troopers in making arrests—specifically arrests for violations of DWI bail conditions—are operational.

■ Distinguishing between operational and planning decisions is a legal question. Nonetheless, "our decisions identifying discretionary functions have invariably involved cases decided on summary judgment; we have never affirmed a dismissal based on the pleadings alone."[23] We recognize that some facets of training and supervising are more likely than others to involve planning, rather than operational, activities.[24] But we cannot

---

15. *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 254 (Alaska 2000) (quoting *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554, 555 (Alaska 1981)).

16. *See Hildebrandt v. City of Fairbanks*, 863 P.2d 240, 245–46 (Alaska 1993) (remanding § 1983 inadequate police training claim because genuine issues of material fact preclude summary judgment).

17. *Guerrero*, 6 P.3d at 255.

18. *Angnabooguk v. State*, 26 P.3d 447, 452 & n. 18 (Alaska 2001) (holding that internal rules and guidelines of state agency do not create duty of care); *Estate of Day v. Willis*, 897 P.2d 78, 81 n. 7 (Alaska 1995) (holding that internal administrative and training manual used by police did not impose duty of care to fleeing suspects).

19. Our decisions addressing duties owed by public officials and related immunity issues usually do not involve dismissals at the pleadings stage. *Guerrero*, 6 P.3d at 261 & n. 77 (holding that dismissal on pleadings on discretionary function immunity grounds was inappropriate). *See also Hildebrandt*, 863 P.2d at 245 (holding that material fact relating to adequacy of supervision de-

feats summary judgment on § 1983 inadequate training claim).

20. AS 09.50.250 provides in part:

A person ... having a ... tort claim against the state may bring an action against the state in a state court that has jurisdiction over the claim.... However, an action may not be brought under this section if the claim
(1) ... is an action for tort, and is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion involved is abused....

21. *E.g., Guerrero*, 6 P.3d at 259; *State v. Abbott*, 498 P.2d 712, 721 (Alaska 1972) (adopting "planning/operational" approach).

22. *Guerrero*, 6 P.3d at 259.

23. *Id.* at 261.

24. *See generally id.* at 261–62 (discussing planning/operational distinction); CIVIL ACTIONS § 2.7, at 113–14, § 2.10, at 125–26 (same). *But see*

decide without some factual context whether the training and supervisory activities Prentzel attributes to Captain Tanner and Colonel Godfrey involved planning functions entitling them to discretionary function immunity. They were therefore not entitled to dismissal of those claims on a discretionary function immunity theory.

### D. Prentzel's Pleadings Do Not Require Dismissal of the § 1983 Claim Against the Individually Named Officers and Troopers.

Prentzel's amended complaint sought money damages and injunctive relief against the "defendants" under 42 U.S.C. § 1983 for certain alleged customs and policies of the Alaska State Troopers.[25] The superior court dismissed Prentzel's § 1983 damages claim, stating:

> Because states and state agencies cannot be sued under § 1983, since they are not "persons" for § 1983 purposes, and the Alaska State Troopers are an agency, created by a statute as a division of the Department of [Public] Safety, Prentzel's [§ 1983 claim] is dismissed to the extent that [it] seeks monetary damages from a state agency.

Prentzel does not argue that the superior court erred by dismissing his § 1983 claim against the state. But he argues that the superior court erred by not construing his § 1983 claim to cover the individual defendants, as well as the state. Prentzel's amended complaint and proposed second amended complaint sought relief against "defendants." Prentzel here contends that "defendants" included not only the state, but also the individual troopers and officers.[26]

Allegations in a pro se complaint are sometimes held to less stringent standards than formal pleadings drafted by lawyers.[27] As such, we consider whether the superior court should have read the term "defendants" in Prentzel's complaint to include the individually named troopers and officers.[28]

Because federal law defines the elements of and defenses to a federal cause of action, we look to federal law to determine the scope of Prentzel's rights and defendants' qualified immunity.[29]

Prentzel's § 1983 claim can be broken down into two categories: a claim against the arresting troopers and a claim against the troopers' supervisors. Before addressing these categories, however, we first must consider a threshold legal question applicable to both categories: whether Prentzel intended to sue the individual defendants in their personal or in their official capacities.

Prentzel's § 1983 claim did not specifically allege in what capacities the defendants acted. If his complaint is read to allege that the troopers simply executed official policy, the troopers could not be held liable for damages under § 1983, because officials acting in their official capacities cannot be the subjects of § 1983 damages suits.[30] But if his complaint

---

*Biscoe v. Arlington County,* 738 F.2d 1352, 1363 (D.C.Cir.1984) (holding that supervising and instructing is operational, not planning).

**25.** 42 U.S.C. § 1983 provides, in part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**26.** Prentzel's proposed second amended complaint includes a claim against "Sergeant John Doe." Because the parties do not discuss whether this unnamed officer may properly be a defendant in this current action, we do not reach this issue.

**27.** *E.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

**28.** The parties do not brief the issue of injunctive relief, and we do not reach it. We refer throughout only to Prentzel's § 1983 damages claim.

**29.** *Brown v. Ely,* 14 P.3d 257, 259 (Alaska 2000).

**30.** In *Will v. Michigan Department of State Police,* the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). The Court reasoned that damages suits against officials in their official capacities are no different from suits against the state itself. *Id.* On the other hand, suits for injunctive relief under § 1983 may be brought against officials acting in their official capacities because " 'official-capaci-

is read to assert that the troopers acted in their personal capacities when they allegedly violated his federal rights, it may assert a actionable § 1983 damages claim.[31] Because the parties did not brief this issue below and have not briefed it on appeal, and because the limited proceedings to date do not permit us to decide it as a matter of law, we decline to reach the issue. But the following comments are appropriate.

We look to the nature of Prentzel's claim, the relief sought, and the course of proceedings to determine whether he intended to sue the defendants in their personal or official capacities.[32] Prentzel's amended complaint and proposed second amended complaint allege that the "defendants" were effectuating "customs or policies" under color of state law when they allegedly violated his federal rights. This implies that Prentzel claimed that the defendants were acting in their official capacities when they committed the complained-of actions. Prentzel's opposition to the state's motion to dismiss his § 1983 claim expresses no intention to sue the defendants in their personal capacities. But Prentzel's pleadings request both monetary and injunctive relief, and monetary relief is only available in personal-capacity lawsuits.[33] Furthermore, the parties do not agree on appeal whether the defendants are entitled to qualified immunity, and qualified immunity is likewise only available in personal-capacity lawsuits.[34]

### 1. Troopers Scott and Gilmore

▮▮▮▮▮ The state defendants argue that Prentzel's claim against Troopers Scott and

Gilmore is "preposterous" because neither of these arresting troopers "had ever engaged in any of [the] so-called customs and policies of the AST that Prentzel alleges." [35] If the troopers were simply executing official policy, they could not be held liable under § 1983. But if, as Prentzel's pleadings impliedly allege, Troopers Scott and Gilmore violated Prentzel's federally created rights while they were acting under color of state law, they could be personally liable under § 1983.[36]

The distinction between personal and official capacity is critical in determining liability under § 1983. If Troopers Scott and Gilmore acted in their official capacities there would be no § 1983 liability for damages because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." [37] Prentzel's amended complaint and proposed second amended complaint allege that the "defendants" violated § 1983 by effectuating under color of state law "customs or policies" that deprived him of federally created rights. The state defendants argue that Troopers Scott and Gilmore believed that Prentzel was either committing a crime in their presence or violating his conditions of release. They argue that Troopers Scott and Gilmore carried out the arrest in their official capacity. We cannot determine from the pleadings alone whether Troopers Scott and Gilmore acted beyond the scope of their official capacities in arresting Prentzel. We therefore cannot determine at this stage of the litigation whether Prentzel has a viable § 1983 claim for damages against Troopers Scott and Gilmore.[38]

---

31. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citation omitted); *see also Okwa v. Harper*, 360 Md. 161, 757 A.2d 118, 135 (2000).

32. *Biggs v. Meadows*, 66 F.3d 56, 61–62 (4th Cir.1995) (describing and adopting majority approach to determining nature of § 1983 claim when plaintiff fails to specifically allege capacity).

33. *Kentucky*, 473 U.S. at 166, 105 S.Ct. 3099.

34. *Id.*

35. The state defendants add that Troopers Scott and Gilmore arrested Prentzel on only a single occasion. Arrest on a single occasion is not likely to constitute a "custom" or "policy." *See* 1 SHELDON NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION § 6:38, at 6–129 (4th ed. 1997) ("A single incident of police officer misconduct . . . is clearly not sufficient.").

36. *Kentucky*, 473 U.S. at 166, 105 S.Ct. 3099; *see also Okwa*, 757 A.2d at 135.

37. *Will*, 491 U.S. at 71, 109 S.Ct. 2304.

38. We do not reach the issue whether Troopers Scott and Gilmore are entitled to qualified immunity because there are unresolved factual issues as to whether they acted in their official or personal capacities.

ty actions for prospective relief are not treated as actions against the state.' " *Id.* at n. 10 (citation omitted).

Prentzel further argues that it was an abuse of discretion to deny his motion to amend his complaint to allege malice expressly. We held in Part III.C in context of the state tort claim against Troopers Scott and Gilmore that denial was an abuse of discretion. But it was not an abuse of discretion in context of the § 1983 claim. The Supreme Court purposely disposed of the subjective element of the immunity defense, and "[b]are allegations of malice" are now effectively irrelevant to a § 1983 claim.[39]

We hold that it is not obvious from the pleadings alone that Prentzel's § 1983 claim against Troopers Scott and Gilmore is without merit.[40] We remand for reinstatement of that claim. But we also hold as to the § 1983 claim that it was not error to deny the motion to amend to allege malice.

### 2. Captain Tanner and Colonel Godfrey

■■ Prentzel argues that the § 1983 claims against "the individual defendants were improperly dismissed." His argument, as discussed above, is that the term "defendants" in his complaint included the individual defendants and was not limited to the state agency. Prentzel's brief does not mention Captain Tanner and Colonel Godfrey with respect to his § 1983 claim. But his proposed second amended complaint states that the "customs and/or policies of defendants

deprive[d][him] of rights secured to him under the United States Constitution." He does not specify the customs or policies to which he refers, but he is not required to specify them at the pleading stage.[41]

The Supreme Court has held that "the inadequacy of police training may serve as the basis of § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."[42] We held in *Hildebrandt v. City of Fairbanks* that "training can justifiably be said to represent … policy … [when] 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy-makers … can reasonably be said to have been deliberately indifferent to the need.' "[43] We allowed the § 1983 claim to go forward in *Hildebrandt* because it was against the City of Fairbanks, which is a "person" for purposes of § 1983.[44] But Captain Tanner and Colonel Godfrey are employees of a state agency, which is not a "person" for purposes of § 1983 suits.[45]

■■ A § 1983 claim would lie against Captain Tanner and Colonel Godfrey if Prentzel could show that they adopted, outside their official capacities, the customs or policies he alleges, causing violations of his civil rights.[46] This would require evidence of their personal involvement in a violation of

---

**39.** *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 & n. 30, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Okwa*, 757 A.2d at 138.

**40.** Troopers Scott and Gilmore are entitled to protection from the § 1983 claim on official immunity grounds if they can establish that a reasonable officer could have believed that their conduct was lawful, even if it actually was not. But as a pleading matter Prentzel did not have to allege both that their conduct was unlawful and that no reasonable officer could have thought that it was lawful.

**41.** To survive dismissal of the § 1983 claim against Captain Tanner and Colonel Godfrey, the complaint must at least allege training or supervision failures. *Meza v. Lee*, 669 F.Supp. 325, 326–27 (D.Nev.1987). Prentzel's complaint satisfies this minimal requirement by alleging that Captain Tanner and Colonel Godfrey negligently failed to train and supervise Troopers Scott and Gilmore.

**42.** *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *see generally* Nahmod, §§ 6:33 to 6:37, at 6–117 to 6–129 (discussing requirements for pleading custom).

**43.** 863 P.2d 240, 246 (Alaska 1993) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

**44.** *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that local governments may be sued as "persons" under § 1983 for unconstitutional policies, practices, and customs); *see also* Nahmod § 6:5, at 6–15 to 6–19.

**45.** *Will*, 491 U.S. at 65–66, 109 S.Ct. 2304.

**46.** Respondeat superior does not apply in § 1983 actions. *Monell*, 436 U.S. at 691, 98 S.Ct. 2018; *see also* Nahmod § 3:91, at 3–246 to 3–247.

Prentzel's rights, and not simply evidence of their status as supervisors of Troopers Scott and Gilmore. "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." [47] A sufficient showing of personal involvement could include demonstrating that Captain Tanner and Colonel Godfrey "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," [48] or showed deliberate indifference in supervising Troopers Scott and Gilmore.[49]

It is not apparent from Prentzel's brief how he thinks Captain Tanner and Colonel Godfrey acted in their personal capacities in allegedly violating his federally created rights. The amended complaint and proposed second amended complaint do not allow us to determine whether the actions of Captain Tanner and Colonel Godfrey were outside the scope of their official capacities, and they do not permit us to ascertain the possible merits of Prentzel's claim. But on remand Captain Tanner and Colonel Godfrey will be entitled to learn through discovery how Prentzel believes they violated his federally created rights. Prentzel's responses may well make his § 1983 claim vulnerable to an immunity defense on summary judgment.

### E. We Do Not Reach Prentzel's *"Bivens"* Claim Because the Issue Is Inadequately Briefed.

Citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,[50] Prentzel urges us to "recognize a cause of action arising directly under the Alaska Constitution" due to "a flagrant violation [for which Prentzel] has no available alternative remedy." The state defendants argue that the superior court "correctly found that the

conduct alleged by Prentzel was not a flagrant violation of Prentzel's rights," and that Prentzel's claims are "identical to those already asserted by Prentzel as common law torts."

Prentzel has inadequately briefed this issue. Even applying a more relaxed standard for a pro se appellant, we will not consider this issue on appeal.[51] We have not previously decided whether to recognize such a cause of action,[52] and this case does not provide a suitable opportunity to do so.

### IV. CONCLUSION

We REVERSE the dismissal of Prentzel's negligence claims against the state defendants and his § 1983 claim against Troopers Scott and Gilmore, Captain Tanner, and Colonel Godfrey, and REMAND for further proceedings. We consequently also VACATE the superior court's award of attorney's fees to the state defendants. We AFFIRM the dismissal of Prentzel's damages claim alleging a violation of the Alaska Constitution.

**47.** *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001).

**48.** *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted); *see also* NAHMOD § 6:38, at 6–129 to 6–130.

**49.** *See City of Canton*, 489 U.S. at 388, 109 S.Ct. 1197.

**50.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**51.** *Martinson v. ARCO Alaska, Inc.*, 989 P.2d 733, 737 (Alaska 1999) (citation omitted).

**52.** *Brown*, 14 P.3d at 261–62.