Loren J. LARSON, Jr., Appellant,

v.

STATE of Alaska, DEPARTMENT OF CORRECTIONS, Appellee.

Loren J. Larson, Jr., Appellant,

v.

Craig Turnbull, Appellee.

Nos. S–14110, S–14129.

Supreme Court of Alaska.

Aug. 31, 2012.

Loren J. Larson, Jr., pro se, Seward, Appellant.

Marilyn J. Kamm, Assistant Attorney General, and John J. Burns, Attorney General, Juneau, for Appellees.

Before: FABE, WINFREE, and STOWERS, Justices. [CARPENETI, Chief Justice, and CHRISTEN, Justice, not participating.]

STOWERS, Justice.

## I. INTRODUCTION

Loren J. Larson, Jr. is incarcerated at the Spring Creek Correctional Center in Seward. Acting pro se, he filed two separate complaints alleging violations of his constitutional rights. His first complaint alleged that he

suffers from paruresis, a condition that makes it impossible for him to urinate in the presence of others, and the correctional facility had violated state and federal constitutional prohibitions against cruel and unusual punishment by failing to accommodate his condition with alternative urinalysis testing procedures. His second complaint alleged that the correctional facility's revised visitor application form for minors violates his state constitutional right to rehabilitation because it is more restrictive than the administrative regulation governing visitation rights. Both complaints were dismissed for failure to state a claim under Alaska Civil Rule 12(b)(6).

We consolidated these two appeals to address an issue common to both-the procedure for properly evaluating a Rule 12(b)(6) motion to dismiss the complaint of a pro se prisoner alleging constitutional violations. We take this opportunity to emphasize that a complaint must be liberally construed and a motion to dismiss under Rule 12(b)(6) is viewed with disfavor and should rarely be granted. Because both of Larson's complaints alleged facts which, if proven, are sufficient to entitle him to some form of relief, and we find no merit in the arguments that Larson lacks standing or is otherwise barred from bringing a direct cause of action for these alleged constitutional violations, we reverse the dismissal of both of Larson's complaints.

## II. FACTS

### A. Cruel And Unusual Punishment Claims

In May 2009 Larson filed a civil complaint against the Alaska Department of Corrections alleging violations of the state and federal constitutional prohibitions against cruel and unusual punishment. Although Larson named Joe Schmidt, the Commissioner of the Department of Corrections, in his summons, his complaint named only the Department of Corrections as a defendant.

Specifically, Larson alleged that he suffers from paruresis, a condition that makes it physically impossible for him to urinate while another person is watching, and that he is required to provide a urine sample for random urinalysis testing every three to four months. He alleged that in order to provide a sample while an officer is watching, he "must drink water until the volume of urine makes the bladder so intensely painful, urination becomes an involuntary function," and this process amounts to "physical torture." Larson requested: (1) a declaratory judgment that forcing him to urinate in front of an officer violates his constitutional rights under the Eighth Amendment to the federal constitution and article I, section 12 of the state constitution;[1] (2) an injunction preventing the Department of Corrections from forcing him to urinate in the presence of another person; and (3) "all costs associated with the filing of this complaint, and any other as deemed by the Court."

Larson attached several documents to his complaint, including letters, correspondence with correctional facility staff, and affidavits. His attachments showed that he had repeatedly brought this issue to the attention of correctional officers, medical staff, and the superintendent, requesting permission to either drink as much water as he needed to provide a urine sample, substitute blood or saliva testing for urinalysis, or be placed in a dry cell by himself to provide a urine sample. He also filed a formal grievance. Medical staff responded, "[T]his is a security issue (not a medical issue), as security does your UA's." A correctional officer granted Larson's request to drink as much water as he needed to provide a urine sample, but when Larson subsequently attempted to drink two glasses of water before urinalysis testing another officer ordered him to pour the second glass out. A third officer denied Larson's request to substitute blood testing for urinalysis, stating, "[T]here is no record in your medical file to support this request." Larson's formal grievance and subsequent appeals were also denied.

The State filed a motion to dismiss Larson's complaint under Civil Rule 12(b)(6) for

---

1. Both article I, section 12 of the Alaska Constitution and the Eighth Amendment to the federal constitution provide: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

failure to state a claim upon which relief could be granted, arguing Larson's constitutional claims were essentially 42 U.S.C. § 1983 claims and an individual cannot bring a direct cause of action against the State under that statute. Larson filed a motion for summary judgment and a motion for a preliminary injunction, attaching the same documents that he had attached to his complaint. The State opposed Larson's motions, again arguing that he could not bring a direct cause of action against the State under 42 U.S.C. § 1983. Larson argued in reply that he had filed his complaint against Commissioner Schmidt and requested an opportunity to correct his filings if they were incorrect in some way.

In a single order, the superior court granted the State's motion to dismiss and denied Larson's motion for summary judgment. The court first granted the State's motion on the grounds that Larson's federal constitutional claim was properly characterized as a 42 U.S.C. § 1983 suit and Larson had improperly named the State, rather than an individual, as the defendant in his complaint. The court reasoned that even if Larson had correctly named Commissioner Schmidt in his complaint, as he had in his summons, his federal constitutional claims did not have merit. The court then proceeded to analyze Larson's summary judgment motion and ruled that Larson had failed to establish a constitutional violation under either the federal or state constitutions. Finally, the court denied Larson's application for a preliminary injunction, ruling he had failed to show probable success on the merits of his claims.

The superior court later clarified that it had dismissed Larson's federal constitutional claim only, because the State had moved to dismiss on the grounds that the State was not a proper defendant in a § 1983 suit and this argument provided no basis for dismissing Larson's state constitutional claim. The State then filed a motion to dismiss Larson's state constitutional claim, relying on *Hertz v. Beach*[2] to argue that Larson had failed to state a claim for relief because there is no private cause of action under the Alaska Constitution. The court granted the State's motion and dismissed Larson's remaining state constitutional claim.

### B.  Right To Rehabilitation Claim

In June 2010 Larson filed a separate complaint against Craig Turnbull, the superintendent of the Spring Creek Correctional Center, alleging a violation of his constitutional right to rehabilitation under article I, section 12 of the state constitution. Specifically, his complaint alleged that the correctional center had revised its visitor application form in March 2010 and the revised application form violated his constitutional right to rehabilitation by being more restrictive than 22 AAC 05.130, the administrative regulation governing visitation. Larson also alleged that he had filed a grievance regarding this issue, which was rejected and his appeal denied. He requested: (1) a declaratory judgment that Superintendent Turnbull had violated his constitutional right to rehabilitation by implementing a visitor application form that is more restrictive than the governing administrative regulation; (2) an injunction ordering Superintendent Turnbull to implement a visitor application form that is not more restrictive than the governing administrative regulation; (3) $15,000 in punitive damages; and (4) $15,000 in compensatory damages.

Larson attached several documents to his complaint, including a letter that he had sent to Sergeant Tiffany Stillers in March 2009 requesting several revisions to the revised application form. In the letter, Larson objected to the requirement that minors and their custodial parent or legal guardian must be on a prisoner's approved visitation list before being allowed to visit, and the provision that a minor would automatically be removed from the visitation list on his or her 18th birthday without prior notice. He argued that family members were also allowed to accompany minor children, even if the child's parent or legal guardian was not on the inmate's approved visitation list,[3] and

---

2.  211 P.3d 668, 677 (Alaska 2009).

3.  *See* 22 AAC 05.130(d)(7) ("A visitor may be excluded for any of the following reasons: ... being under the age of 18, unless the visitor is a

that there should be a process for pre-approving minors for visitation as adults one month prior to their 18th birthday to avoid gaps in their ability to visit. Larson expressed concern that this revised application form would affect his son, who was turning 18 in June 2010. Larson also attached to his complaint the grievance that he had filed with the correctional facility. He also attached a superior court order from a 2009 case in which he had complained of an inconsistency between two regulations affecting the visitation procedure for his minor daughter when accompanied by a non-parent family member; in the 2009 order, the superior court ruled that Larson's complaint had been resolved because the Department of Corrections had agreed to amend the regulations.[4]

Superintendent Turnbull filed a motion to dismiss Larson's complaint under Civil Rule 12(b)(6) for failure to state a claim upon which relief could be granted. He relied on *Hertz* to argue there is no private cause of action under the Alaska Constitution, and also argued that Larson had failed to allege his right to rehabilitation was actually impacted by the revised visitor application form. Larson opposed the State's motion and attached the correctional facility's visitor application form to his opposition brief. The State filed a reply brief and attached several documents as well, including an April 2010 memorandum notifying inmates that previously approved visitors would not be required to submit a new visitor application, an affidavit from Sergeant Stillers stating she had personally sent two approval forms to

Larson's son before his 18th birthday to prevent any interruption in his visits with his father, and a May 2009 note from Superintendent Turnbull to Larson giving permission for Larson's mother to accompany his minor children on visitations.

The superior court granted the State's motion to dismiss, ruling: "Plaintiff has failed to state a claim for relief. There is no private cause of action under the Alaska Constitution. The alleged failure to comply with an administrative regulation is an issue of administrative law, not constitutional law. This case is dismissed with prejudice."

Larson appeals the dismissal of both of his complaints.

## III.  STANDARD OF REVIEW

We review a superior court's dismissal of a complaint for failure to state a claim under Alaska Civil Rule 12(b)(6) de novo.[5] The complaint must be liberally construed and we treat all factual allegations as true.[6] "[A] motion to dismiss under Rule 12(b)(6) is viewed with disfavor and should rarely be granted."[7] To survive a motion to dismiss, a complaint "need only allege a set of facts consistent with and appropriate to some enforceable cause of action."[8] A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim" that would entitle him to some form of relief, even if the plaintiff requests a type of relief he is not entitled to obtain.[9]

family member of the prisoner *escorted by an adult family member* ....") (emphasis added).

4.  *Larson v. State, Dep't of Corr.*, No. 3AN-09-10280 CI (Alaska Super., May 17, 2010).

5.  *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000) (citing *Kollodge v. State*, 757 P.2d 1024, 1026 n. 4 (Alaska 1988)).

6.  *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1151 (Alaska 2009) (citing *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008)); *Guerrero*, 6 P.3d at 253 (citing *Kollodge*, 757 P.2d at 1026).

7.  *Guerrero*, 6 P.3d at 253 (citing *Kollodge*, 757 P.2d at 1026); *see also Clemensen*, 203 P.3d at

1151 (quoting *Jacob*, 177 P.3d at 1184) ("[Rule 12(b)(6) ] dismissals are viewed with disfavor and should only be granted on the rare occasion where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief.").

8.  *Guerrero*, 6 P.3d at 253–54 (quoting *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 128 (Alaska 2000)) (internal quotation marks omitted).

9.  *Id.* at 254 (quoting *Martin v. Mears*, 602 P.2d 421, 429 (Alaska 1979)); *see also Shooshanian v. Wagner*, 672 P.2d 455, 461 n. 5 (Alaska 1983) (citing *Miller v. Johnson*, 370 P.2d 171, 172 (Alaska 1962)) ("[G]ranting the Rule 12(b)(6) motion would be improper if the [plaintiff's] complaint states a claim upon which some relief may be granted, although the relief demanded may

In reviewing a motion to dismiss, we generally do not consider matters outside the complaint,[10] although we may consider attachments to the complaint.[11] When parties present additional materials outside of the pleadings in connection with a motion to dismiss, the superior court must expressly exclude the materials or convert the motion into a motion for summary judgment under Alaska Civil Rule 56 and allow all parties a reasonable opportunity to submit materials pertinent to such a motion.[12] When the superior court does neither, but instead decides the motion under Rule 12(b)(6) without stating whether it considered materials outside the pleadings, we have three options: we may elect to reverse and remand for proper consideration; we may review the superior court's decision as if the motion for dismissal had been granted after exclusion of outside materials; or we may review the decision as if summary judgment had been granted after conversion of the motion to dismiss into one for summary judgment.[13]

## IV.  DISCUSSION

### A.  Cruel And Unusual Punishment Claims

### 1.  The State's motion to dismiss Larson's federal constitutional claim for failure to name the proper defendant under § 1983

Larson challenges the dismissal of his complaint against the Department of Corrections, arguing the superior court erred by failing to give him an opportunity to amend his complaint and by ruling that his federal and state constitutional claims lacked merit. The State initially moved to dismiss Larson's complaint on the grounds that he had incorrectly named the State as the defendant in a 42 U.S.C. § 1983 suit. The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... [14]

We have stated that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." [15] The superior

not be the kind to which the party is in fact entitled to obtain.").

**10.**  *Dworkin v. First Nat'l Bank of Fairbanks,* 444 P.2d 777, 779–80 (Alaska 1968).

**11.**  *Adkins v. Stansel,* 204 P.3d 1031, 1035 n. 20 (Alaska 2009) (citing *Kaiser v. Umialik Ins.,* 108 P.3d 876, 878 n. 1 (Alaska 2005)) ("Attachments to a complaint are properly considered a part of the complaint in connection with a motion to dismiss."); *see also Ahwinona v. State,* 922 P.2d 884, 886 (Alaska 1996) (stating the trial court could properly rely on documents attached to the plaintiff's complaint without converting the defendant's motion to dismiss to a motion for summary judgment).

**12.**  *See* Alaska R. Civ. P. 12(b) ("If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *see also Kaiser,* 108 P.3d at 879.

**13.**  *See Kaiser,* 108 P.3d at 879 (quoting *Reed v. Municipality of Anchorage,* 741 P.2d 1181, 1184 (Alaska 1987)); *see also Phillips v. Gieringer,* 108 P.3d 889, 892–93 (Alaska 2005) (electing to review a motion to dismiss as a motion for summary judgment). For example where parties had a reasonable opportunity to present evidentiary material pertinent to a summary judgment motion, we have reviewed a superior court's ruling as an entry of summary judgment. *See Brice v. State, Div. of Forest, Land & Water Mgmt.,* 669 P.2d 1311, 1314 (Alaska 1983). Where parties did not have sufficient notice or an adequate opportunity to respond prior to dismissal as required for summary judgment motions under Rule 56, we have treated the superior court's decision as a dismissal for failure to state a claim and declined to review materials outside the pleadings. *See Shooshanian,* 672 P.2d at 460–61.

**14.**  42 U.S.C. § 1983 (2006).

**15.**  *Prentzel v. State, Dep't of Pub. Safety,* 53 P.3d 587, 594 n. 30 (Alaska 2002) (quoting *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

court agreed that Larson's federal constitutional claim was properly characterized as a § 1983 claim and that Larson had incorrectly named the State as a defendant.

■ However, a state official may be sued for injunctive relief under § 1983.[16] Larson stated in the briefing supporting his summary judgment motion that he believed he had filed his complaint against Commissioner Schmidt and specifically requested an opportunity to correct his filings if necessary. The pleadings of pro se litigants are "held to less stringent standards than those of lawyers," and the superior court must "inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish."[17] But the superior court did not give Larson an opportunity to amend his complaint because the court concluded that even if Larson had properly named Commissioner Schmidt in his complaint as well as his summons, his federal constitutional claim failed on its merits.

■ The Eighth Amendment's prohibition of "cruel and unusual punishment" imposes a duty on prison officials to provide "humane conditions of confinement," which includes ensuring that inmates receive adequate medical care.[18] A prison official's "deliberate indifference" to an inmate's "serious medical needs" violates the Eighth Amend-

ment.[19] To prevail on a deliberate indifference claim, an inmate must first show a serious medical need by demonstrating that failure to treat the condition could result in "further significant injury *or the unnecessary and wanton infliction of pain.*"[20] The inmate must then show that a prison official was deliberately indifferent to that need, meaning the official "knows of and disregards an excessive risk to inmate health and safety."[21] Here, the superior court concluded: "Even assuming that Larson's alleged paruresis constitutes a serious medical need, it is clear from the filings that the prison officials did not exhibit deliberate indifference to his condition." This conclusion is problematic for several reasons.

■ First, the State never challenged the substance of Larson's allegations or argued that his allegations were insufficient to support his federal constitutional claim. As the superior court observed, the State's first motion to dismiss was based solely on the grounds that Larson had named the wrong defendant for a § 1983 claim. But naming the wrong defendant is an insufficient basis for dismissing Larson's complaint. As a pro se plaintiff, Larson must be informed of the proper procedure for the action he was obviously attempting to accomplish.[22] Therefore, he should have been allowed to amend his complaint to name a proper defendant.[23]

16. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. 2304 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' ").

17. *Capolicchio v. Levy*, 194 P.3d 373, 378 (Alaska 2008) (quoting *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987)).

18. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

19. *Hertz v. Beach*, 211 P.3d 668, 677 (Alaska 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Farmer*, 511 U.S. at 828, 835, 114 S.Ct. 1970.

20. *Hertz*, 211 P.3d at 677–78 (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006)) (emphasis added).

21. *Id.* at 678 (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.2004)).

22. *See Capolicchio*, 194 P.3d at 378 (quoting *Breck*, 745 P.2d at 75).

23. We also note that to prevail on a deliberate indifference claim, Larson must name as a defendant a prison official who was aware of his alleged condition and disregarded his requests for alternative testing procedures. *See Hertz*, 211 P.3d at 678–79 ("For deliberate indifference, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference. Deliberate indifference to medical needs may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm. When the facts do not demonstrate that the defendants had this knowledge, however, a deliberate indifference claim must fail.") (internal quotation marks and citations omitted).

But the superior court did not deny the State's motion and allow Larson to amend his complaint. Instead, the court relied on the materials that Larson submitted with his complaint and summary judgment motion to conclude that Larson's federal constitutional claim lacked merit, even though the State raised only a procedural argument and made no attempt to challenge the substance of Larson's claims, and Larson, a pro se litigant, was given no opportunity to respond to such a challenge.

Finally, we disagree with the superior court's conclusion that, assuming Larson suffers from paruresis and experiences pain when providing urine samples for urinalysis, his pleadings and attachments demonstrate that prison officials were not deliberately indifferent to his condition. The court reasoned: "Larson's own exhibits show that he was examined by various mental health professionals numerous times. Their conclusions are unclear, but the fact that the examinations took place shows that officials were not deliberately indifferent to Larson's complaints." The State relies on *Chapman v. Raemisch*[24] to argue that the fact the examinations took place, combined with correspondence between Larson and prison officials about his condition, demonstrates the officials were not deliberately indifferent to his condition. In *Raemisch*, prison officials accommodated an inmate's paruresis by implementing a modified urinalysis testing procedure (allowing him to provide a sample in a closed bathroom stall with an officer standing quietly outside the door), and provided the inmate with a number of treatment options to help alleviate his condition.[25] The district court rejected the inmate's argument that he

should be allowed to use an alternate form of drug testing, such as blood or saliva testing, holding, "even if plaintiff would prefer a form of testing that did not include urinalysis, it does not follow that any urinalysis test constitutes deliberate indifference to his [condition]."[26] Unlike *Raemisch*, Larson's allegations and exhibits show that prison officials were aware of his complaint and did nothing to accommodate his condition. Assuming Larson suffers from paruresis and experiences extreme pain when providing urinalysis samples, as we must for purposes of a Rule 12(b)(6) motion to dismiss,[27] the mere fact that medical staff examined Larson is insufficient to conclusively establish that prison officials were not deliberately indifferent to his condition.

### 2. The State's motion to dismiss Larson's state constitutional claim under *Hertz v. Beach*

For Larson's state constitutional claim, the State filed a second Rule 12(b)(6) motion relying on *Hertz* to argue that "[t]here is no private cause of action under the Alaska Constitution." The superior court agreed and granted the State's motion.

In *Hertz*, an inmate filed a civil suit against prison medical staff, alleging he had received inadequate dental treatment in violation of his state and federal constitutional rights and seeking both damages and injunctive relief.[28] At the time of appeal, the inmate had received the dental procedure he requested, which "mooted his request for injunctive relief, leaving only his claim for damages."[29] We construed the inmate's deliberate indifference claim as a federal constitutional claim, observing that his parallel

---

24. No. 05–C–1254, 2009 WL 425813 (E.D.Wis., Feb. 20, 2009).

25. *Id.* at *3, 6.

26. *Id.* at *6.

27. We note that Larson submitted no evidence of a medical diagnosis, and his own affidavits are insufficient to establish that he actually suffers from paruresis. Larson's attachments show that he met with mental health clinicians and medical staff at the correctional facility, although, as the superior court observed, "[t]heir conclusions are

unclear." The record shows that Larson submitted a discovery request to the State attempting to obtain all information documenting or associated with these meetings, but the State failed to provide him with the requested documents. At oral argument the State admitted that the requested documents were never produced. If the State fails to respond to Larson's discovery requests, Larson should file a motion to compel discovery under Civil Rule 37.

28. 211 P.3d 668, 672–74 (Alaska 2009).

29. *Id.* at 674 n. 1.

claim for damages under the Alaska Constitution would not be viable: "[W]e will not imply a private cause of action for damages under the Alaska Constitution 'except in cases of flagrant constitutional violations where little or no alternative remedies are available.' Medical malpractice and federal constitutional law provide adequate remedies to redress inadequate dental treatment." [30]

*Hertz* and the cases it relies on stem from the Supreme Court's decision in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*[31] allowing a plaintiff to claim monetary damages against federal agents based on a violation of his rights under the Fourth Amendment to the federal constitution.[32] *Hertz* did not address or restrict claims for injunctive relief based on constitutional violations. We have previously recognized that injunctive relief is an "available and appropriate remedy" for violations under the state constitution, even where a *Bivens* claim for damages is unavailable.[33] And we have previously affirmed the right of a prison inmate to sue the State and prison officials for violations of the inmate's constitutional rights.[34]

Here, Larson requested declaratory and injunctive relief and "all costs associated in the filing of this complaint." Larson did not actually request damages; therefore *Hertz* does not apply. Even if Larson had request-ed some form of relief that he was not entitled to obtain, his complaint should not have been dismissed under Rule 12(b)(6) unless it appeared that he could prove no set of facts in support of his claim that would entitle him to some other form of relief.[35]

For these reasons, we reverse the superior court's rulings under Rule 12(b)(6) dismissing Larson's federal and state constitutional claims and remand for further proceedings, including allowing Larson to file an amended complaint. If the State wishes to challenge the sufficiency of the evidence supporting Larson's claims, the State can file a summary judgment motion and Larson will have an adequate opportunity to respond, including obtaining appropriate discovery in support of his claims.

Larson also challenges the superior court's denial of his motion for a preliminary injunction. In denying Larson's motion, the superior court ruled that Larson had failed to make a clear showing of probable success on the merits, given the court's previous ruling that his claims lacked merit. Because we disagree with the court's analysis, we also reverse the court's ruling on Larson's preliminary injunction motion and remand for the court to reconsider whether Larson demonstrated probable success on the merits.

**30.** *Id.* at 677 n. 12 (quoting *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005)) (internal citations omitted).

**31.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**32.** *Id.* at 397, 91 S.Ct. 1999; *see Lowell*, 117 P.3d at 753–54 ("We have never recognized a *Bivens*-type private right of action for constitutional torts under the Alaska Constitution. We have stated that we will not allow a constitutional claim for damages, except in cases of flagrant constitutional violations where little or no alternative remedies are available.") (internal quotations marks omitted); *Dick Fischer Dev. No. 2, Inc. v. State, Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992) (observing "federal courts have been reluctant to extend the *Bivens* decision where alternative remedies are available" and holding "[w]e are also hesitant to extend the *Bivens* decision, and will not allow a claim for damages except in cases of flagrant constitution-

al violations where little or no alternative remedies are available").

**33.** *See Herrick's Aero–Auto–Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Serv.*, 754 P.2d 1111, 1116 (Alaska 1988) ("[U]nlike *Bivens*, injunctive relief is an available and appropriate remedy for righting any wrong done to the [plaintiffs]. As a result, we hold the *Bivens* remedy of damages inapplicable to the case at bar.").

**34.** *See Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 309 (Alaska 2007) (citing *Ferguson v. State, Dep't of Corr.*, 816 P.2d 134 (Alaska 1991)).

**35.** *See Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 254 (Alaska 2000) (quoting *Martin v. Mears*, 602 P.2d 421, 429 (Alaska 1979)); *Shooshanian v. Wagner*, 672 P.2d 455, 461 n. 5 (Alaska 1983) (citing *Miller v. Johnson*, 370 P.2d 171, 172 (Alaska 1962)) ("[G]ranting the Rule 12(b)(6) motion would be improper if the [plaintiff's] complaint states a claim upon which some relief may be granted, although the relief demanded may

## B. Right To Rehabilitation Claim Under The State Constitution

### 1. Motion to dismiss and trial court order

██ Larson also challenges the dismissal of his complaint against Superintendent Turnbull under Rule 12(b)(6). In his motion to dismiss, Superintendent Turnbull argued that: (1) under *Hertz* there is no private cause of action under the Alaska Constitution; (2) the correctional facility's alleged failure to follow an administrative regulation was an issue of administrative law, not constitutional law; and (3) Larson failed to allege he was actually harmed by the adoption of the revised visitation form. The superior court agreed, ruling: "There is no private cause of action under the Alaska Constitution. The alleged failure to comply with an administrative regulation is an issue of administrative law, not constitutional law."

As discussed above, *Hertz* restricts a *Bivens* claim for damages under the Alaska Constitution to "cases of flagrant constitutional violations where little or no alternative remedies are available."[36] Before dismissing Larson's claims for punitive and compensatory damages, the superior court was required to determine whether Larson had alleged a "flagrant" constitutional violation and whether alternative remedies were available to him. Larson also requested injunctive and declaratory relief. As discussed above, *Hertz* does not apply to such claims. Furthermore, Superintendent Turnbull correctly conceded at oral argument that Larson's claims for declaratory and injunctive relief were not barred by *Hertz,* and that whether the revised visitation application form violated Larson's right to rehabilitation under the state constitution was an issue of constitutional law, not administrative law. However, Superintendent Turnbull urges us to affirm the superior court's ruling dismissing Larson's complaint on alternative grounds, arguing that Larson lacks standing and his claims are barred by collateral estoppel.

### 2. Standing

██ Superintendent Turnbull argues that Larson has not demonstrated a sufficient personal stake in this litigation because he failed to allege that his visitation rights have actually been impacted by the revised visitor application form. We disagree.

██ Superintendent Turnbull relies on the attachments submitted with his briefing to the superior court in support of his motion to dismiss to argue that the correctional facility has taken steps to ensure Larson's visitation with his minor children has not been interrupted since the adoption of the revised visitation form. Such materials were not properly before the superior court on a Rule 12(b)(6) motion to dismiss, and the superior court did not expressly convert Superintendent Turnbull's motion into a motion for summary judgment.[37] "The terms of Rule 12(b) make conversion mandatory whenever matters outside the pleadings are presented to and not excluded by the court."[38] Although we could elect to review the superior court's decision as an order granting summary judgment,[39] we decline to do so when there is no indication that the superior court considered these materials in granting Superintendent Turnbull's motion.[40]

██ Furthermore, we have interpreted the concept of standing broadly, "favoring increased accessibility to judicial forums."[41]

---

not be the kind to which the party is in fact entitled to obtain.").

**36.** *Hertz v. Beach,* 211 P.3d 668, 677 n. 2 (Alaska 2009) (quoting *Lowell,* 117 P.3d at 753).

**37.** *See* Alaska R. Civ. P. 12(b); *Kaiser v. Umialik Ins.,* 108 P.3d 876, 879 (Alaska 2005); *Dworkin v. First Nat'l Bank of Fairbanks,* 444 P.2d 777, 779–80 (Alaska 1968).

**38.** *Martin v. Mears,* 602 P.2d 421, 426 (Alaska 1979) (internal quotation marks omitted).

**39.** *See Kaiser,* 108 P.3d at 879 (quoting *Reed v. Municipality of Anchorage,* 741 P.2d 1181, 1184 (Alaska 1987)).

**40.** *See Kaiser,* 108 P.3d at 879 (noting the superior court's order indicated the court had reviewed the motion as a summary judgment motion); *Shooshanian,* 672 P.2d at 460–61 (noting it was clear from the superior court's order that court had considered matters outside the pleadings).

**41.** *See Bowers Office Prods., Inc. v. Univ. of Alaska,* 755 P.2d 1095, 1097 (Alaska 1988) (quoting

We have identified two types of standing: interest-injury and taxpayer-citizen standing.[42] To establish interest-injury standing, a party must demonstrate "a sufficient personal stake in the outcome of the controversy to ensure the requisite adversity."[43] However, the degree of injury to interest need not be great: "an identifiable trifle is enough for standing to fight out a question of principle."[44]

Similarly, AS 44.62.300 provides that "[a]n interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court." In *Bowers Office Products, Inc. v. University of Alaska*,[45] we held that a company challenging the university's grievance process after the university rejected the company's bid in favor of another supplier was an "interested person" under this statute, even though the company requested prospective declaratory relief only, reasoning that "as a continuing bidder to the University, [the company] will continue to be subjected to the rules it seeks to have reviewed."[46] In contrast, in *Kleven v. Yukon–Koyukuk School District*,[47] we held that an employee who had started a grievance process and then subsequently resigned from the school district did not have standing to challenge the school district's grievance procedure because he was no longer an employee and, therefore, was no longer subject to the contested grievance procedures or threatened by the alleged safety violations.[48]

Here, Larson's complaint alleged that the correctional facility's revised visitor application form violates his right to rehabilitation under the state constitution because it is more restrictive than the administrative regulation governing visitation. The attachments to Larson's complaint show that he was concerned this revision would impact his visitation with his son, and that he had previously filed a complaint alleging violations of his visitation rights with his minor daughter.[49] As an inmate with minor children who continues to be subject to the contested visitation form, Larson has demonstrated a "sufficient personal stake in the outcome of the controversy" to establish standing under our broad standing principles.

### 3. Collateral estoppel

Finally, Superintendent Turnbull argues that Larson is collaterally estopped from claiming damages under the Alaska Constitution by *Larson v. State, Department of Corrections*,[50] the earlier superior court case in which Larson complained of an inconsistency between two regulations affecting the visitation procedure for his minor daughter when accompanied by a non-parent family member, because in that case the superior court also dismissed Larson's claim for monetary damages based on an alleged violation of his constitutional right to rehabilitation. Collateral estoppel applies where: "(1) the issue decided in the prior adjudication was *precisely the same* as that presented in the action in question; (2) the prior litigation must have resulted in a final judgment on the merits; and (3) there must be 'mutuality' of

*Trustees for Alaska v. State, Dep't of Natural Res.*, 736 P.2d 324, 327 (Alaska 1987)).

42. *Kleven v. Yukon–Koyukuk Sch. Dist.*, 853 P.2d 518, 526 (Alaska 1993).

43. *Id.* (quoting *Hoblit v. Comm'r of Natural Res.*, 678 P.2d 1337, 1340 (Alaska 1984)) (internal quotation marks omitted).

44. *Bowers*, 755 P.2d at 1097 (quoting *Trustees for Alaska*, 736 P.2d at 327).

45. 755 P.2d 1095 (Alaska 1988).

46. *Id.* at 1098.

47. 853 P.2d 518 (Alaska 1993).

48. *Id.* at 526 (comparing *Bowers*, 755 P.2d at 1098 with *Rutter v. State*, 668 P.2d 1343, 1346 (Alaska 1983)).

49. We may consider the attachments to Larson's complaint because such attachments "are properly considered a part of a complaint in connection with a motion to dismiss." *Adkins v. Stansel*, 204 P.3d 1031, 1035 n. 20 (Alaska 2009). We do not consider the attachments that Superintendent Turnbull submitted with his motion to dismiss because such attachments are materials outside the pleadings and, therefore, were not properly before the superior court on a motion to dismiss. *See* Alaska R. Civ. P. 12(b); *Dworkin v. First Nat'l Bank of Fairbanks*, 444 P.2d 777, 779–80 (Alaska 1968).

50. No. 3AN–09–10280 CI (Alaska Super., May 17, 2010).

parties."[51] Larson's prior case was based on a visitation incident with his minor daughter that occurred in 2009. His present complaint is based on a 2010 revision to the correctional facility's visitor application form. The issues are not identical and collateral estoppel does not apply. However, we reiterate that Larson is only entitled to damages under the Alaska Constitution if the superior court finds that Larson's present allegations amount to a flagrant constitutional violation and there are no alternative remedies available.[52]

## V. CONCLUSION

We REVERSE both of the superior court orders dismissing Larson's complaints for failure to state a claim under Rule 12(b)(6), and REMAND for further proceedings consistent with this opinion.

**51.** *Snyder v. State, Dep't of Pub. Safety, Div. of Motor Vehicles,* 31 P.3d 770, 774 n. 17 (Alaska 2001) (quoting *Briggs v. State, Dep't of Pub. Safety, Div. of Motor Vehicles,* 732 P.2d 1078, 1081 (Alaska 1987)) (emphasis added).

**52.** *See Hertz v. Beach,* 211 P.3d 668, 677 n. 12 (Alaska 2009).