William KAISER, Appellant,

v.

UMIALIK INSURANCE, Gary
Foster, and Rural Alaska
Insurance, Appellees.

No. S–11088.

Supreme Court of Alaska.

March 11, 2005.

William Kaiser, pro se, Sheridan, Oregon, Appellant.

Gary Foster, Fairbanks, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

FABE, Justice.

## I. INTRODUCTION

In this bad faith action against insurers, the pro se plaintiff filed his complaint at least a year after the statute of limitations had

run. He appeals the dismissal of his claim, arguing that his untimeliness should be excused. He argues both that the defendants should be estopped from relying on the statute of limitations and that the statute should be tolled. The estoppel argument is raised for the first time on appeal, and the plaintiff does not meet the requirements for tolling. We therefore affirm the superior court's order dismissing his claim.

## II. FACTS AND PROCEEDINGS

### A. Factual History

■ This case arises from a fire at William and Patricia Kaiser's North Pole home in April 1998. The home was insured by Umialik Insurance, through agent Rural Alaska Insurance. William Kaiser filed an insurance claim and began receiving some payments. At the time, the Kaisers were in the midst of a divorce and Patricia was, according to William, "suffering from severe psychological and emotional distress."[1]

In a pair of letters dated July 29 and September 2, 1998, Gary Foster, who apparently served as both attorney and investigator for Umialik, wrote to Kaiser to deny the insurance claim and explain the reasons for the denial. In these two letters, the first one brief and the second more detailed, Foster depicted the fire as suspicious and the Kaisers as homeowners saddled with an unsellable property and an expiring insurance policy. Foster noted that in March 1997 the Kaisers had attempted to sell the house, but the sale fell through when the prospective purchasers' engineer found "many, many structural, systems, and code problems." Foster further recounted that in December 1997 Kaiser informed Rural Alaska, his insurance agency, that his wife had threatened to burn the house down and asked the agency whether his policy would cover the house if she did. Foster's letter then detailed an attempted refinancing of the home in January 1998, which he surmised was intended to pay for repairs. According to Foster's re-

construction of events, the refinancing was approved but conditioned on an appraisal. An appraiser visited the home and found that its "condition rendered it 'not appraisable.'" The refinancing never occurred.

On February 12, 1998, according to Foster's letters, Kaiser informed Rural Alaska that he did not want to renew the insurance policy because he and his soon-to-be ex-wife planned to move out by April. On April 13, however, Kaiser requested an extension on the insurance policy, explaining to the insurance agent that he and his wife were going to stay in the house. According to Foster's account, a Rural Alaska agent informed Kaiser on the afternoon of April 20 that Umialik had denied the extension and that other insurance was not forthcoming. The house burned the next morning. In the course of the fire investigation, Foster wrote, kerosene, not fuel oil, was found near the home's furnace. Based on these events, Foster concluded that "it is more likely than not[ ] that [Kaiser] intentionally set this fire." Kaiser's insurance claim was therefore denied.

Foster's first letter also noted that Kaiser might have ongoing liabilities: Umialik might be obliged to pay off the mortgage, in which case Kaiser would be liable for reimbursing Umialik. Umialik later obtained a default judgment against Kaiser for just over $88,000.

Following the fire, Kaiser was hospitalized twice, in 1999 and 2000, for a serious illness that left him "physically and intellectually unable to function in a reasonably normal manner." He was also arrested in December 2000 "on unrelated drug charges" and has been incarcerated since then.

### B. Procedural History

On September 12, 2002, while in a federal prison hospital in Minnesota, Kaiser, acting as his own lawyer, filed a complaint against Umialik, Foster, and Rural Alaska (collec-

---

1. This factual account is drawn from the allegations of Kaiser's complaint, the attachments thereto, and assertions he made in subsequent briefing. The attachments are properly considered as part of the complaint. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir.1990); *Ahwinona v.*

*State*, 922 P.2d 884, 886 (Alaska 1996). Although the subsequent assertions are unsworn and not part of the record, they are not contested and we include them here in order to provide the pro se appellant the fullest possible opportunity to make his case.

tively, Umialik) in superior court in Fairbanks. The complaint alleges that Kaiser "had no involvement of any kind" in the fire, and further alleges bad faith by Umialik and Foster. According to Kaiser, this bad faith was manifested in "a systematic method of intimidation to deny [Kaiser] his rightful claim." This assertion seems to refer to Foster's conduct of the investigation. Before answering Kaiser's complaint, Foster moved for dismissal under Alaska Rule of Civil Procedure 12(b)(6), arguing that Kaiser's claim was barred by the statute of limitations. Rural Alaska joined the motion and Umialik filed a statement of non-opposition. Kaiser then filed a "Motion To Show Good Cause To Allow Petitioner To File Claim," which contained a series of factual assertions that Kaiser claimed supported "grant[ing] equitable tolling" of the statute of limitations. The superior court considered the motion as an opposition to dismissal and dismissed the complaint.

## III. DISCUSSION

### A. Standard of Review

■ The superior court dismissed Kaiser's claim under Alaska Rule of Civil Procedure 12(b)(6). Kaiser's "Motion to Show Good Cause" asserted facts not included in the complaint. When materials outside the pleadings are submitted with regard to a motion to dismiss, the superior court must either explicitly exclude the materials or convert the motion into one for summary judgment under Alaska Rule of Civil Procedure 56.[2] When the superior court does neither, but instead decides the motion under Rule 12(b)(6) without stating whether it is considering the outside materials or not, this court has three options: "[W]e may reverse and remand for proper consideration, or we may review the superior court's decision as if the

motion for dismissal had been granted after exclusion of outside materials, or as if summary judgment had been granted after conversion of the motion to dismiss into one for summary judgment."[3]

It is not clear which standard the superior court used in this case, nor whether the court excluded outside materials. On March 3, 2003, the superior court entered an order by which "Kaiser's complaint [was] dismissed with prejudice." It noted on that order that it considered Kaiser's "Motion To Show Good Cause" as an opposition to dismissal. But the superior court's final judgment, entered on April 14, 2003, announced that it had granted summary judgment for the defendants.

■ Under Rule 12(b)(6) a complaint may be dismissed for "failure to state a claim upon which relief can be granted." We review a dismissal under Rule 12(b)(6) de novo "presum[ing] all factual allegations of the complaint to be true and [making] all reasonable inferences in favor of the non-moving party."[4] The failure to file a complaint within the time set out by a statute of limitation is a ground for Rule 12(b)(6) dismissal.[5] The complaint should survive as long as "there is a set of facts, provable within the framework of the complaint, under which the complaint was timely filed."[6]

■ Summary judgment may be entered for a party under Rule 56 when "there is no genuine issue as to any material fact and ... [the] party is entitled to judgment as a matter of law."[7] "All reasonable inferences of fact are drawn in favor of the party opposing the motion [for summary judgment] and against the moving party."[8] We review grants of summary judgment de novo.[9]

2. Alaska R. Civ. P. 12(b); *Martin v. Mears*, 602 P.2d 421, 425–26 (Alaska 1979).

3. *Reed v. Municipality of Anchorage*, 741 P.2d 1181, 1184 (Alaska 1987).

4. *Kollodge v. State*, 757 P.2d 1024, 1026 & n. 4 (Alaska 1988) (quotation marks and ellipsis omitted).

5. *Hutton v. Realty Executives, Inc.*, 14 P.3d 977, 979 (Alaska 2000).

6. *Toney v. City of Anchorage Police Dep't*, 950 P.2d 123, 124 (Alaska 1997).

7. Alaska R. Civ. P. 56(c).

8. *Yurioff v. American Honda Motor Co.*, 803 P.2d 386, 388 (Alaska 1990).

9. *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 28 (Alaska 1998).

Under either standard, if the facts presented by the plaintiff, whether offered as allegations in a complaint or as evidence in the record, do not excuse his untimeliness as a matter of law, his claim fails. That is the case here. Kaiser's complaint was untimely as a matter of law even if we take into account all of the facts he has alleged and asserted before this court and the superior court. Our choice of whether to review the superior court's decision as a dismissal or a summary judgment therefore has no effect on the outcome of the case.[10]

## B. Kaiser's Claim Was Barred by the Statute of Limitations.

The statute of limitations began running on September 2, 1998, when Foster sent his letter offering a detailed explanation for the denial of Kaiser's claim. Kaiser filed his complaint alleging bad faith in that denial on September 12, 2002, over four years later. The Alaska statute of limitations for tort actions is two years[11] and the statute for contract actions is three years.[12] Kaiser's complaint was thus late regardless of how the claim is characterized. Kaiser argues that his unquestioned untimeliness should be excused.

He makes two distinct arguments, one related to the doctrine of equitable estoppel and one related to equitable tolling. Although both doctrines serve to excuse an untimely filing, they differ in that equitable estoppel turns on wrongdoing by the party invoking the statute of limitations, while our equitable tolling rule looks only to the claimant's circumstances—whether he has pursued an alternative remedy that proved unavailing.[13] Neither doctrine saves Kaiser's claim, nor does Alaska's statutory tolling provision.

### 1. Kaiser waived his claim to equitable estoppel.

When a defendant's wrongful conduct "lull[s] [a plaintiff] into inaction" or otherwise induces him to delay filing a claim until the limitation period has run, the defendant is equitably estopped from invoking the statute.[14] To establish grounds for equitable estoppel, the plaintiff must plead "that he or she relied on the defendant's fraud by either consciously relying on an affirmative misrepresentation, or failing to discover fraudulently concealed evidence."[15]

Kaiser argues on appeal that Umialik is estopped from invoking the statute of limitations because Gary Foster lulled him into not filing suit or seeking independent legal advice until the statute had run. But in his "Motion To Show Good Cause," which the superior court treated as an opposition to dismissal, Kaiser only argued that his divorce, illness, and incarceration should toll the statute of limitations. Kaiser averred in the superior court that he had experienced a bitter and emotionally draining divorce and that he had been sick, requiring hospitalization in 1999 and again in 2000. He also relied on his arrest and incarceration on an unrelated matter in 2000. He told the superior court that he had unsuccessfully attempted to retain counsel to represent him in the matter and did not have access to the appropriate legal materials and state statutes while incarcerated. Kaiser concluded by alleging that "[u]nder what have been extremely difficult circumstances," he had "attempted to address this matter in a timely manner and [ ] attempted to preserve his right to pursue action on this claim." Based on these circumstances, he asked the superior court

10. The resolution of this particular case does not relieve the superior court of its duty to clarify the standard it uses and to announce whether it is excluding outside material.

11. AS 09.10.070.

12. AS 09.10.053.

13. *See Abbott v. State*, 979 P.2d 994, 997–98 (Alaska 1999); *see also Fred Meyer, Inc. v. Bailey*, 100 P.3d 881, 886 (Alaska 2004).

14. *Gudenau & Co., Inc. v. Sweeney Ins., Inc.*, 736 P.2d 763, 769 (Alaska 1987); *see also Groseth v. Ness*, 421 P.2d 624, 630 (Alaska 1966).

15. *Law Offices of Steven D. Smith, P.C. v. Borg–Warner Security Corp.*, 993 P.2d 436, 446 (Alaska 1999).

"to grant equitable tolling for the mitigating circumstances." Kaiser did not argue in the superior court, as he does here, that he was unaware of his claim as a result of Gary Foster's conduct. Indeed, at the time he opposed the motion to dismiss, Kaiser argued that he had attempted to pursue his claim in a timely fashion and was unable to proceed with his claim because of his illness and incarceration. Estoppel is thus a new theory of Kaiser's case, not raised below. This court "will not consider on appeal new arguments which (1) depend on new or controverted facts, (2) are not closely related to the appellant's arguments [in the superior court], and (3) could not have been gleaned from the pleadings, unless the new issue raised establishes plain error."[16]

Kaiser's estoppel claim is based on new facts and cannot be discerned from his pleadings. He appears to base his claim of equitable estoppel on the allegation that "[s]ubsequent to [the letter denying Kaiser's claim], Gary Foster informed appellant that he could not sue or pursue any claim against Umialik." This argument is presented only in Kaiser's appellate briefs. Kaiser alleges in his complaint that Foster engaged in "a systematic method of intimidation to deny plaintiff his rightful claim," but this allegation does not go to equitable estoppel. It appears that Kaiser is alleging interference with his claim for reimbursement from the insurance company, not with his ability to file a lawsuit, and there is no mention of communication by Foster concerning Kaiser's right to sue. The complaint also alleges "bad faith acts of the insurance company through their attorney Gary Foster." Similarly, the alleged bad faith acts appear to relate to the denial of the insurance claim, not to the discouragement of a lawsuit.

Finally, Kaiser's estoppel argument is not "closely related" to the tolling argument he made before the superior court. While the two doctrines have the same general effect of excusing untimeliness, they focus on entirely different realms of facts—estoppel looks to the conduct of the party invoking the limitation period while tolling is concerned with the circumstances of the untimely party.[17] Kaiser's opposition to the motion to dismiss was based on the "extremely difficult circumstances" of divorce, illness, and incarceration that he had experienced and his tolling argument was based on his inability to retain counsel or address the known claims during this period. Kaiser's appellate claim that defendants should be estopped from asserting the statute of limitations as a defense is thus a new argument and is waived because he did not raise it in the superior court; we will not consider it here.[18]

### 2. Kaiser is not entitled to equitable tolling.

■■■ In Alaska, the doctrine of equitable tolling has been applied to halt the running of the statute of limitations when multiple legal remedies are available to the plaintiff and time runs out on one remedy while the plaintiff is pursuing another unavailing remedy.[19] A claim for tolling has three elements: "(1) pursuit of the initial remedy [must] give[ ] defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence [must] not [be] prejudiced by the delay, and (3) plaintiff [must] act[ ]

---

**16.** *Krossa v. All–Alaskan Seafoods, Inc.*, 37 P.3d 411, 418–19 (Alaska 2001) (quotation marks and citation omitted).

**17.** *See Abbott*, 979 P.2d at 997–98.

**18.** Although the superior court apparently relied on facts outside the pleadings without prior notice of conversion to a Civil Rule 56 motion for summary judgment, the party potentially prejudiced by the superior court's failure to rely on these matters was Umialik. Had the superior court decided to deny Umialik's motion to dismiss based on Kaiser's factual assertions without giving Umialik a chance to file further materials outside the pleadings, Umialik could have complained about the lack of notice. But because Kaiser was permitted by the superior court to make factual claims that fell outside of the pleadings in response to the motion to dismiss, he was not prejudiced by the court's failure to formally convert the motion. And whether we review the superior court's order as a ruling on the Rule 12(b)(6) motion or as a decision granting summary judgment, Kaiser never mentioned his equitable estoppel theory in opposition to the motion in the superior court.

**19.** *See Fred Meyer, Inc. v. Bailey*, 100 P.3d at 886; *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989).

reasonably and in good faith." [20] Kaiser has not pursued any other remedy and therefore cannot toll the limitation period under this theory.

Other jurisdictions apply equitable tolling in two additional situations. The statute may be tolled "where the plaintiff, by exercising reasonable diligence, could not have discovered essential information bearing on his or her claim." [21] Alaska recognizes this principle in its discovery rule, controlling the starting date of the statute of limitations for certain claims.[22] In many jurisdictions, equitable tolling also applies "where extraordinary circumstances outside the plaintiff's control make it impossible for the plaintiff to timely assert his or her claim." [23] We have neither accepted nor rejected this theory of tolling.

But this case does not require us to decide whether the statute of limitations should be tolled when the plaintiff faces extraordinary circumstances beyond his control, because Kaiser faced no such circumstances. He claims the events following the denial of his insurance claim—his divorce, incarceration, and illness—add up to extraordinary circumstances. But these are not the kind of extraordinary circumstances that would justify tolling. Courts have allowed equitable tolling when plaintiffs have been kept from the courts by legal barriers [24] or by truly extraordinary events, like wars.[25] Even if we were to recognize equitable tolling for extraordinary circumstances, Kaiser's circumstances, as a matter of law, would not earn it.[26]

### 3. Tolling under AS 09.10.140 does not save Kaiser's claim.

▇▇▇▇▇ Alaska Statute 09.10.140 provides that when a person is "incompetent by reason of mental illness or mental disability" during the limitation period, the period is tolled for the time of the disability. We "interpret[ ] liberally the type of mental condition that will toll a statute of limitations. The general test is whether a person could know or understand his legal rights sufficiently well to manage his personal affairs." [27] Kaiser does not raise this tolling statute, but he does assert that he was "totally incapacitated ... for approximately six [ ] months" in 1999 and that he was "physically and intellectually unable to function in a reasonably normal manner" during his second hospitalization, "in May of 2000." Even accepting the inference that the 2000 hospitalization left him incapacitated for the entire month of May, that adds up to seven months of incapacity. Under the most generous statute of limitation that might be available to him, Kaiser had three years to file his claim.[28] He filed four years after the statute

---

20. *Id.*

21. *Abbott*, 979 P.2d at 998 (applying federal law).

22. *See, e.g., Sopko v. Dowell Schlumberger, Inc.,* 21 P.3d 1265, 1270–72 (Alaska 2001); *Bauman v. Day,* 892 P.2d 817, 827–28 (Alaska 1995); *Greater Area, Inc. v. Bookman,* 657 P.2d 828, 829–30 (Alaska 1982).

23. *Abbott,* 979 P.2d at 998; *see also, e.g., Seattle Audubon Soc'y v. Robertson,* 931 F.2d 590, 596 (9th Cir.1991) ("[W]hen external forces, rather than plaintiff's lack of diligence, account for the failure to file a timely claim, equitable tolling is proper."); *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1099 (Colo.1996) (allowing equitable tolling when "truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts"); *Machules v. Dep't of Admin.,* 523 So.2d 1132, 1134 (Fla. 1988) (allowing tolling when plaintiff "has in some extraordinary way been prevented from asserting his rights").

24. *Cf. Seattle Audubon,* 931 F.2d at 595–96 (equitably tolling limitations period because unconsti-

tutional statute barred plaintiffs from filing claims).

25. *E.g., Hanger v. Abbott,* 73 U.S. (6 Wall.) 532, 542, 18 L.Ed. 939 (1867) (tolling statute of limitations because Civil War made filing suit impossible); *Osbourne v. United States,* 164 F.2d 767, 768–69 (2d Cir.1947) (tolling statute of limitations because plaintiff held in Japan during Second World War was unable to file claim).

26. *Cf. Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 389–90 (Alaska 1990) (holding that discovery rule did not save plaintiff's untimely claim merely because he was bedridden).

27. *Adkins v. Nabors Alaska Drilling, Inc.,* 609 P.2d 15, 23 (Alaska 1980).

28. *See* AS 09.10.053 (three-year statute of limitations for contract actions).

began running. Even with seven months' tolling, he was untimely as a matter of law, and his claim is barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the superior court is AFFIRMED.