NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| HELEN HARMON, | ) | |
| | ) | Supreme Court No. S-18148 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-20-00603 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KENNETH MAYER, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1935 – December 7, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jennifer K. Wells, Judge.

Appearances: Ben Frey, Ben Frey: Attorney at Law, Soldotna, for Appellant. Hilary D. Stump, Gilman & Pevehouse, Kenai, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I.  INTRODUCTION

A man died in 1999 and the probate of his estate under a 1983 will was concluded by late 2004. In 2020 the man's sister sued his estate's former personal representative, alleging that the personal representative had concealed the existence of a later will devising the man's property to an also later trust for which she was the trustee and beneficiary. The personal representative moved to dismiss the lawsuit for failure to

---

\*      Entered under Alaska Appellate Rule 214.

state a claim not barred by a statute of limitations.[1]  The superior court dismissed the sister's lawsuit because her claims were time-barred under applicable statutes of limitations, and the sister appeals.  Because the superior court correctly applied the statutes of limitations, we affirm the superior court's dismissal of the lawsuit.

## II.    FACTS AND PROCEEDINGS

### A.    Facts [2]

Dale Neether, a long-time Kenai resident, died in 1999.  He was survived by many relatives, including his sister Helen Harmon.  His estate included potentially valuable mineral rights in North Dakota and other real property in Alaska.  Harmon took an interest in Dale's[3] estate when she learned that he may have created a trust in which she was trustee and beneficiary and a will devising Dale's property to the trust.

Dale signed a will in 1983, but there was some debate over that will's validity.  Harmon understood that Dale had withdrawn his 1983 will from the court registry in 1989 and that sometime between 1990 and 1993 Dale had several stop-and-start client relationships with local lawyers.  According to Harmon, Dale hired one of these lawyers to draft a second will and later had a second lawyer create an *inter vivos* trust in which to place his property before his death.

In late 1999 Dale's brother Larry presented the 1983 will for probate in

---

[1]    Alaska R. Civ. P. 12(b)(6).

[2]    Because we are required in the current context to accept as true Harmon's factual allegations, we describe her allegations without qualification and as fact.  *See Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012) (explaining that when reviewing a motion to dismiss we do so as a matter of law but only after construing complaint liberally and accepting all factual allegations as true).

[3]    Because many of the parties share the surname Neether, we often use their first names to avoid confusion; we intend no disrespect.

Alaska as Dale's apparent last will and became personal representative.[4]  Larry stated that he had "searched the accessible areas of [his deceased brother Dale's] property and ha[d] not found any instrument revoking the [1983] will," but that "some evidence does exist that [Dale] may have revoked this will."  He also stated that as personal representative he might be able to determine if a later will existed.  He further stated that he might in the future bring formal proceedings to determine the validity of the 1983 will.[5]  That year two more of Dale's siblings, including his brother Alphonso, opened an ancillary probate in North Dakota.

Larry resigned as personal representative in 2001 without finding a second will or petitioning the court to determine the validity of the 1983 will.  The superior court accepted Larry's resignation and appointed Kenneth Mayer to replace Larry as personal representative.[6]  Among the beneficiaries of Dale's 1983 will was a Catholic church in Kenai where Mayer was a parishioner.  According to Harmon, the Kenai church had sought Mayer's appointment because it was unsatisfied with Larry's performance and "entrusted [Mayer] to represent their interests in the probate [as] the primary heirs listed in the 1983 will."

Mayer administered the estate according to the terms of the 1983 will, which devised specified real and personal property to some of Dale's siblings, the Kenai church, and a boys' home in North Dakota.  The will devised Dale's North Dakota real estate, including his mineral rights, to the boys' home, and also devised Dale's residual estate to the boys' home.  The will devised nothing to Harmon.

---

[4]  *See* AS 13.16.145, .205 ( governing formal probate of will and appointment of personal representative).

[5]  *See* AS 13.16.140 (formal testacy proceeding to determine validity of will).

[6]  *See* AS 13.16.290 (governing resignation of personal representative).

Harmon asserts that while Mayer was personal representative, he learned of a second will and a trust, under which Harmon was named both trustee and beneficiary. She claims that the second will "acted as a 'pour over' will in some aspects, giving [Dale's] property . . . to the trust [he] had commissioned."[7] Mayer allegedly was "aware of the . . . second will" but "failed to submit this will to the [court]."

Both the Alaska probate and the ancillary North Dakota probate were closed by 2004. No trust documents were submitted to the probate proceeding, and no property was given to Harmon before the probates closed.

## B.     Proceedings

Because Harmon's lawsuit was dismissed for failure to state a claim, the relevant proceedings consist of the parties' filings.

### 1.     Harmon's complaint

In 2020 Harmon sued Mayer, alleging various forms of misconduct in his capacity as personal representative of Dale's estate. Harmon asserted four causes of action related to the alleged second will and related trust. First, she alleged that by concealing the second will, Mayer breached his fiduciary duty as personal representative.[8] Second, she alleged that she had "an absolute right to possession of the

---

[7]     By "pour over will," Harmon refers to a provision in a will "by which a part of the testator's estate is to go to an already existing *inter vivos* trust without repeating the terms of the trust in the will." 79 AM. JUR. 2D *Wills* § 187 (2022). *See also* V. Woerner, Annotation, *"Pour-over" Provisions from Will to Inter Vivos Trust*, 12 A.L.R.3d 56 (1967).

[8]     AS 13.16.395 states:

If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of fiduciary duty to the

(continued...)

trust" arising from her duty to administer the trust under AS 13.36.090,[9] that Mayer's administration of the estate under the 1983 will deprived her of that right, and that Mayer committed "the tort of claim and delivery."[10] In her third and fourth claims Harmon alleged that Mayer committed both fraud and fraud in the inducement when he informed Harmon she stood to gain something from the estate as a possible heir but then closed the estate without Harmon receiving anything. She sought $7 million in compensatory damages and $1 million in punitive damages.

---

[8]    (...continued)
same extent as a trustee of an express trust. The rights of purchasers and others dealing with a personal representative shall be determined as provided in AS 13.16.400 and 13.16.405.

[9]    AS 13.36.090 states:

A trustee is under a continuing duty to administer the trust at a place appropriate to the purposes of the trust and to its sound, efficient management. If the principal place of administration becomes inappropriate for any reason, the court may enter any order furthering efficient administration and the interests of beneficiaries, including, if appropriate, release of registration, removal of the trustee under AS 13.36.076, and appointment of a trustee in another state. Trust provisions relating to the place of administration and to changes in the place of administration or of trustee control unless compliance would be contrary to efficient administration or the purposes of the trust.

[10]    Claim and delivery is an action for relief indistinguishable from replevin, at least as it relates to this matter. *See Rollins v. Leibold*, 512 P.2d 937, 944 (Alaska 1973) ("Replevin is defined as an action brought to recover goods unlawfully taken."). The superior court characterized Harmon's claim as one for replevin, which Harmon does not object to on appeal.

## 2.     Mayer's answer and motion to dismiss

Mayer answered Harmon's complaint. He admitted that he was appointed personal representative after Larry's unproductive tenure. Mayer denied acting outside his scope of authority in the role and Harmon's various allegations of improper conduct. He asserted that he had closed the original probate in Alaska on March 14, 2003. He also pleaded affirmative defenses, arguing that Harmon had failed to state a claim for relief and that her claims were untimely under various statutes of limitations.

Mayer filed a separate motion to dismiss under Alaska Civil Rule 12(b)(6).[11] Mayer contended that the complaint "fails to state a claim on which relief can be granted because . . . Harmon's action is barred by the two-year statute of limitations to recover personal property." Mayer added: "Presuming all facts alleged in the Complaint as true, . . . there is no set of facts provable . . . under which the Complaint was timely filed," in light of AS 09.10.070's two-year tort statute of limitations. He argued that, as a matter of law, a reasonable person would have discovered any of the four causes of action by 1999, when Harmon learned that her brother had died and the first personal representative was looking for a second will, if one existed.

## 3.     Harmon's response

Harmon opposed Mayer's motion, attaching several documents in an attempt to support her claims. Several documents purported to demonstrate a second will existed, which should have governed the Alaska and North Dakota probate proceedings. Harmon reiterated that the "second will was more than likely a 'pour over' will," in which Dale left "most of his assets to the trust." She pointed to attachments suggesting

---

[11]     Alaska R. Civ. P. 12(b)(6) (providing for motion to dismiss for "failure to state a claim upon which relief can be granted").

the 1983 will was invalid and that a second will existed. One attachment was Dale's October 1989 request to withdraw a will deposited with the superior court; Harmon characterized this as evidence that Dale had withdrawn and invalidated his 1983 will. Other attachments, including a cancelled check payable to an attorney and an information packet about drafting a will, indicated, in Harmon's view, that in 1990 Dale had asked a Kenai attorney to draft a new will. Harmon also attached a letter from a Kenai church representative, stating that Dale had expressed an intent to devise his "snow equipment" to the church in a will he had "just made" sometime between 1990 and 1991. Harmon further attached Larry's petition to be made personal representative, in which he stated that he had "searched the accessible areas of [Dale's] property and ha[d] not found any instrument revoking the [1983] will" and that the "original of decedent's will dated October 20, 1983" was the only will "on file with th[e] court."

Other attachments describe the alleged trust to which property may have been devised in a second will. A January 2003 letter from the estate's attorney informed Harmon and other relatives that the estate had learned Dale "held title to" property in North Dakota "as 'trustee' for the benefit of certain family members." The attorney indicated this property was subject to a local tax assessment but that the estate had no knowledge of any "written trust document." The attorney suggested Harmon and her relatives "retain an attorney to assist . . . in the naming of a trustee to succeed Dale." Enclosed with the letter to Harmon was a separate letter that the attorney sent to the North Dakota tax assessor on the same day, informing the assessor that the estate was "not the successor trustee" (emphasis omitted) but that relatives had been advised of the need to find one. In her opposition Harmon acknowledged that she had in fact received documents that may have been trust documents from Dale in 1993, but she denied that she had known what the documents were and claimed she did not keep any copies.

Harmon attached the 2003 closing statement for the ancillary North Dakota probate with her opposition. This closing statement, indicated that Mayer had "distributed the assets of the estate to the persons entitled to" them. Harmon also attached two deeds Mayer had executed conveying the estate's real property interests to the boys' home and to Dale's relatives.

### 4.    The superior court's dismissal order

In 2021 the superior court dismissed Harmon's claims against Mayer. In analyzing the motion to dismiss, the court prepared a chronology organizing Harmon's complaint allegations and the events captured by the attachments to her oppositit_ion to the motion to dismiss. The court decided to dismiss Harmon's suit as untimely based on the following timeline:

- In 1983 Dale authored a will, deposited the will with the court, and then withdrew the will in 1989.

- In 1993 Harmon received documents that she signed, notarized, and returned to Dale; she speculated they "might have been trust documents."

- In 1999 Dale died. His brother Larry opened probate proceedings and was appointed personal representative to administer the estate. In Larry's probate petition, he said that the 1983 will was Dale's last will but that he would look for a subsequent will because some evidence suggested the 1983 will had been revoked.

- In 2000 a Kenai church representative wrote Larry a letter regarding a second will.

- In 2001 Mayer was appointed personal representative and, assisted by the estate's attorney, "administered the estate per the 1983 will."

- In 2003 the estate's attorney wrote Harmon a letter advising her of a

possible trust having title to real estate in North Dakota.

• In 2003 Mayer closed an ancillary probate in North Dakota.

• In 2004 Mayer closed the original probate in Alaska. The court determined that the Alaska probate closed in 2004 by taking judicial notice of probate records on file.

To Harmon's breach of fiduciary duty claim, the court applied the applicable statute of limitations, requiring claims against a personal representative to be brought within six months of the closing statement.[12] The court found that Harmon knew enough "to alert her to the potential for a cause of action" against Mayer after the estate's attorney had informed Harmon about a possible trust in 2003 and Mayer closed the probates by 2004. The court construed her claim and delivery cause of action as one for replevin, and applied AS 09.10.070, requiring tort claims to be brought within two years.[13] The court found that Harmon had notice prompting reasonable inquiry no later

---

[12] AS 13.16.640 provides:

Unless previously barred by adjudication and except as provided in the closing statement, the rights of successors and of creditors whose claims have not otherwise been barred against the personal representative for breach of fiduciary duty are barred unless a proceeding to assert them is commenced within six months after the filing of the closing statement. The rights thus barred do not include rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate.

[13] AS 09.10.070 provides:

Except as otherwise provided by law, a person may not bring an action . . . for taking, detaining, or injuring personal

(continued...)

than 2004, when Mayer was discharged as personal representative. To Harmon's fraud and fraud in the inducement claims the court noted it could either apply AS 09.10.053's three-year contract statute of limitations,[14] or AS 09.10.070's two-year tort statute of limitations. The court found that Harmon had information prompting reasonable inquiry about a second will by 2000 and about a trust by 2003. Because all of Harmon's claims against Mayer were not brought until 2020, the court concluded they were not timely.

Harmon appeals the court's dismissal of her claims for breach of fiduciary duty and claim and delivery.

## III. STANDARD OF REVIEW

"We review de novo a superior court's grant of a Rule 12(b)(6) motion to dismiss for 'failure to state a claim upon which relief can be granted.' "[15] "Like the superior court, we are required to 'accept[] as true all factual allegations' in a

---

[13]     (...continued)
property, including an action for its specific recovery, . . . unless the action is commenced within two years of the accrual of the cause of action.

[14]     AS 09.10.053 provides:

Unless the action is commenced within three years, a person may not bring an action upon a contract or liability, express or implied, except as . . . provided by law, or, except if the provisions of this section are waived by contract.

[15]     *ResQSoft, Inc. v. Protech Sols., Inc.*, 488 P.3d 979, 984 (Alaska 2021) (quoting *Guerrero v. Alaska Hous. Fin. Corp.*, 6 P.3d 250, 253 (Alaska 2000)).

complaint."[16]  A court considers attachments to a complaint[17] and documents that the complaint refers to without attaching them, unless the authenticity of the unattached documents is questioned.[18]

## IV.  DISCUSSION

Mayer moved to dismiss Harmon's claims as untimely.  The superior court granted the motion after reviewing her complaint and the additional documents she filed, which the superior court appeared to treat as attached to the complaint.  Considering Harmon's complaint and the attached documents, we conclude that her claims accrued by 2004 and were therefore required to be dismissed because she could "prove no set of facts" that would make her claims timely.[19]

### A.  Harmon's Claims Are Barred By The Statutes of Limitations.

A statute of limitations "begins to run in all cases when a cause of action 'accrues.' "[20]  In those cases when "an element of a cause of action is not immediately apparent," we have adopted the discovery rule for establishing the accrual date.[21]  Under the "discovery rule," "the statute of limitations does not begin to run until the claimant

---

[16]  *Id.* at 989 (footnote omitted) (quoting *Pedersen v. Blythe*, 292 P.3d 182, 184 (Alaska 2012)).

[17]  *See Larson v. State, Dep't of Corr.*, 284 P.3d 1, 7 (Alaska 2016) ("In reviewing a motion to dismiss, we generally do not consider matters outside the complaint, although we may consider attachments to the complaint.").

[18]  *ResQSoft*, 488 P.3d at 989 (citing *Alleva v. Mun. of Anchorage*, 467 P.3d 1083, 1088-89 (Alaska 2020)).

[19]  *Id.*

[20]  *Harrell v. Calvin*, 403 P.3d 1182, 1186 (Alaska 2017).

[21]  *John's Heating Serv. v. Lamb*, 129 P.3d 919, 923 (Alaska 2006).

discovers, or reasonably should have discovered, the existence of all elements essential to the cause of action."[22] We have further outlined that a claim accrues when the litigant has "enough information to prompt a reasonable person to investigate further," also known as the "inquiry notice" date.[23]

Based on Harmon's complaint and attached documents, her claims accrued by 2004. Harmon alleged that Dale executed a second will in 1999. The record reflects that in 1999 she had notice a second will might exist based on statements in Larry's petition to open probate proceedings. The superior court also found she knew about a second will no later than 2000 based on the letter from the sister at the beneficiary church. Harmon alleged that Dale established a trust in 1993. The record supports the superior court's finding that she had notice of the trust by 2003 based on the estate's attorney's letter to her and other relatives about North Dakota property in a trust. Harmon alleged that despite being aware of a second will including the trust as a beneficiary Mayer committed fraud by representing that all assets had been distributed and closing the estate. Under the facts she set forth, Harmon "reasonably should have known from the date" she learned that the estate was closed "that potential claims existed against [Mayer]" as personal representative.[24] Harmon therefore reasonably should have discovered her claims by 2004.

---

[22] *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 291 (Alaska 1988).

[23] *Harrell*, 403 P.3d at 1187. In the exceptional instance "when a plaintiff makes a reasonable inquiry but still fails to acquire enough information 'within the statutory period at a point where there remains a reasonable time within which to file suit,' " the cause of action accrues at the "later 'actual notice' date instead." *Id.* at 1188 (quoting *Cameron v. State*, 822 P.2d 1362, 1367 (Alaska 1991)).

[24] *See Palmer v. Borg-Warner Corp.*, 818 P.2d 632, 634 (Alaska 1990); *see also Harrell*, 403 P.3d at 1186-88.

Because Harmon's claims accrued by 2004, her suit was untimely by nearly two decades.[25] Under AS 09.10.070, Harmon needed to commence her claim to recover property within two years of the accrual date, meaning she needed to bring the claim and delivery action by 2006.[26] Under AS 13.16.640, Harmon needed to commence her claim for breach of fiduciary duty within six months of the closing statement, which would have been sometime in late 2004.[27] The superior court thus did not err by ruling that Harmon's claims were untimely.

B.      **Harmon's Statutory Arguments Are Unavailing.**

Harmon does not contest the accrual of her claims in or before 2004. Instead she argues that her untimeliness should be excused for several reasons. To revive her claim and delivery cause of action, she suggests either that the court should not have applied a statute of limitations or that the court applied the wrong statute of limitations. To revive her claim for breach of fiduciary duty, she seeks to indefinitely toll AS 13.16.640's statute of limitations. We are not persuaded by either argument.

---

[25]     *See Harrell*, 403 P.3d at 1186 (explaining that purposes of statutes of limitations "are to encourage plaintiffs to promptly investigate and file civil suits and to afford defendants 'the right to be free of stale claims' " (footnote omitted) (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979))).

[26]     Even assuming Harmon's claim concerns real property, her claim is still time-barred because "a person may not bring an action for the recovery of real property . . . unless the action is commenced within 10 years." AS 09.10.030(a).

[27]     AS 13.16.640 does not time-bar "rights to recover from a personal representative for fraud, misrepresentation, or inadequate disclosure related to the settlement of the decedent's estate." But Harmon does not appeal the dismissal of her two fraud claims, nor does she adequately explain how the breach of fiduciary duty claim would fit within this exception. *See Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015) (noting that we will not consider issues "given only a cursory statement in the argument portion of a brief").

Harmon contends that the superior court should not have applied a statute of limitations to her claim and delivery cause of action because, in her words, doing so provides a "roadmap for would-be thieves to successfully steal property." Harmon argues "a statute of limitations [for] . . . replevin should not exist in Alaska as being contrary to public policy." This argument misconceives both the purpose behind statutes of limitations and the role of the courts in relation to those statutes. "Statutes of limitations 'are found and approved [of] in all systems of enlightened jurisprudence,' " and they "encourage plaintiffs to promptly investigate and file civil suits."[28] They both liberate defendants from "stale claims" and protect " 'the courts from' litigation 'in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.' "[29] Alaska Statute 09.10.070 requires tort actions for the recovery of property to be brought within two years, while AS 09.10.030 requires actions for the recovery of real property to be brought within ten years. The legislature chose to apply a limitations period to replevin claims, and Harmon fails to show that this legislative policy is so arbitrary and irrational as to be unconstitutional.[30]

Harmon alternatively contends that if a statute of limitations must apply, the superior court applied the wrong one. She contends that claim and delivery is "simply . . . descriptive . . . [of] the cause of action that exists within the statute

---

[28] *Harrell*, 403 P.3d at 1186 (alteration in original) (quoting *Kubrick*, 444 U.S. at 117).

[29] *Id.* (quoting *Kubrick*, 444 U.S. at 117).

[30] *Cf. State, Dep't of Revenue v. Andrade*, 23 P.3d 58, 71 (Alaska 2001) ("The party attacking a statute has the burden to 'negative every conceivable basis which might support it.' " (quoting *Katmailand, Inc. v. Lake & Peninsula Borough*, 904 P.2d 397, 401 (Alaska 1995))).

AS 13.36.090" and is not a tort.  Instead, Harmon argues, the duties that AS 13.36.090 impose on a trustee imply a cause of action for the trustee or trust beneficiary "to sue anyone who stands in the way of proper administration" of the trust.  This claim, she argues, is governed by the statute of limitations in AS 13.36.100, which requires that trust beneficiaries bring claims against a trustee within six months of receiving trust records.[31]  Because Mayer allegedly failed to provide her with trust records, Harmon argues that the six-month period never began, so her claim is still timely.

This suggested application of AS 13.36.100 strains common sense.  This interpretation would allow her, an alleged trustee, to bring a claim against a third party

---

[31]     AS 13.36.100(a) and (c) contain the relevant limitations periods. Subsection (a) applies when the disclosure of trust records is inadequate:

> Unless resolved or barred under (b) or (c) of this section, and notwithstanding the lack of adequate disclosure, all claims against a trustee who has issued a report received by the beneficiary and who has informed the beneficiary of the location and availability of records for examination by the beneficiary are barred unless a proceeding to assert the claims is commenced within three years after the beneficiary's receipt of the report.

If the disclosure of records is adequate, then subsection (c) requires the claims against the trustee be brought within six months:

> If a trustee serves a report on a beneficiary that adequately discloses the existence of a potential claim against the trustee, the trustee informs the beneficiary that a proceeding to assert any claim against the trustee must be commenced by the beneficiary within six months after receipt of the report, and the beneficiary fails to assert a claim against the trustee, all claims of the beneficiary are barred.

who is neither a trustee nor a beneficiary.[32]  We have already established that AS 13.36.090 contemplates only an action *against* the trustee, not *by* a trustee.[33]  Harmon's attempt to apply the statute in the current context is unavailing.

Finally, Harmon asks that we apply equitable estoppel to AS 13.16.640's statute of limitations as applied to her claim of breach of fiduciary duty.[34]  Taking the complaint's allegations as true, there is no basis to for us to apply equitable estoppel.  We have equitably estopped a defendant from invoking a statute of limitations when "a party . . . fraudulently conceals from a plaintiff the existence of a cause of action" and the "delay in bringing suit was occasioned by reliance on the false or fraudulent

---

[32]     *See Murphy v. Fairbanks North Star Borough*, 494 P.3d 556, 563 (Alaska 2021) ("We interpret a statute 'according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose.' " (quoting *Vandenberg v. State, Dep't of Health & Soc. Servs.*, 371 P.3d 602, 606 (Alaska 2016))).

[33]     *See Est. of K.H. v. Cont'l Ins. Co.*, 73 P.3d 588, 593 (Alaska 2003) ("The statute contemplates that the final account or statement triggering the statute of limitations must be submitted by the trustee. . . . It is the trustee, not a third person[,] . . . who must issue the final account or other statement fully disclosing the matter . . . .").

[34]     Though Harmon uses the term "tolling" at one point, we construe her argument to be one of equitable estoppel, because it is based on the assertion that Mayer wrongfully induced her to delay filing suit.  We have defined equitable estoppel as when a defendant's wrongful conduct "induces [the claimant] to delay filing a claim until the limitation period has run."  *Kaiser v. Umialik Ins.*, 108 P.3d 876, 880 (Alaska 2005).  Equitable tolling, on the other hand, "looks only to the claimant's circumstances—whether he has pursued an alternative remedy that proved unavailing." *Id.*  "While the two doctrines have the same general effect of excusing untimeliness, they focus on entirely different realms of facts—estoppel looks to the conduct of the party invoking the limitation period while tolling is concerned with the circumstances of the untimely party." *Id.* at 881.  Despite her choice of words, Harmon looks to Mayer's conduct, not her own, as the basis for halting the statute of limitations.

representations."[35] Harmon does not address how Mayer's alleged fraudulent conduct while he served as personal representative from 2001 to 2004 impacted her ability to bring this claim prior to 2020. Even assuming as true all of Harmon's allegations against Mayer, she fails to explain or justify her almost two-decade delay in bringing suit.

## V. CONCLUSION

We AFFIRM the superior court's dismissal of Harmon's claims and lawsuit.

---

[35]     *Chiei v. Stern*, 561 P.2d 1216, 1217 (Alaska 1977); *see also Kaiser*, 108 P.3d at 880-81 (refusing equitable estoppel when based on new facts, not discerned from pleadings, and not closely related to arguments made before superior court).